**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:**

**SECURITIES AND EXCHANGE COMMISSION,**

       **Plaintiff,**

   **v.**

**VERGEOUS LLC,
DREAM TEAM PARTNERS LLC, and
PAUL E. RENFROE,**

       **Defendants.**

## COMPLAINT

Plaintiff Securities and Exchange Commission alleges and states as follows:

### I. INTRODUCTION

1. The Commission brings this action to enjoin Vergeous LLC ("Vergeous"), Dream Team Partners LLC ("Dream Team"), and Paul E. Renfroe ("Renfroe") (collectively, "Defendants") from violations of the anti-fraud and registration provisions of the federal securities laws.

2. From at least June 2013 through June 2016, Vergeous, Dream Team, and Renfroe raised about $1.2 million from approximately 33 investors in Florida, Tennessee, Mississippi, Texas, Indiana, South Carolina, and Alabama through a series of unregistered securities offerings.

3. The purported purpose of the Vergeous and Dream Team offerings was to fund video game projects undertaken at first by Vergeous and then later by a joint venture between

Vergeous and Dream Team.  Renfroe was primarily responsible for raising money from investors for both companies.  Many of the investors were elderly clients of Renfroe's other business.  Renfroe advertised the securities on his radio show and on Vergeous's website.

4. Vergeous, Dream Team, and Renfroe made misrepresentations and omissions orally and in offering materials distributed to investors regarding: (1) Renfroe's disciplinary history; (2) the purported use of some investor proceeds to pay debt and back pay related to a suspended project; and (3) Dream Team's 100% ownership of intellectual property rights for all of its joint video game projects with Vergeous and Renfroe's ownership stake in Dream Team.

5. By engaging in this conduct, Defendants violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and 77e(c)] and Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)]; and Renfroe violated Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)(1)].  Unless restrained and enjoined, Defendants are reasonably likely to continue to violate the federal securities laws.

6. The Commission also seeks disgorgement of all ill-gotten gains, including prejudgment interest thereon; an order directing Renfroe to pay civil money penalties; and any other relief that may be necessary and appropriate.

## II. DEFENDANTS

7. Vergeous is a Florida limited liability company formed in January 2013 with its principal address in Santa Rosa Beach, Florida.  Vergeous and its securities have never been registered with the Commission in any capacity.

8. Dream Team is a Florida limited liability company formed in April 2015 with its principal address in Santa Rosa Beach, Florida.  Dream Team and its securities have never been registered with the Commission in any capacity.

9. Renfroe resides in Santa Rosa Beach, Florida. Renfroe is the founder of Vergeous and a co-founder of Dream Team. Renfroe has served as Chief Financial Officer for both Vergeous and Dream Team from inception through the present. In addition, Renfroe is the sole proprietor of Emerald Coast Financial Accounts LLC, a DBA through which he markets annuities, high interest CDs and other similar products. Renfroe was previously associated with several broker-dealers registered with the Commission and held Series 6, 22 and 63 licenses. In June 2002, Renfroe consented to an NASD permanent bar from association with any NASD member.

### III.  JURISDICTION

10. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].

11. This Court has personal jurisdiction over the Defendants, and venue is proper in the Southern District of Florida, because, among other things, the Defendants' acts and transactions constituting violations of the Securities Act and Exchange Act occurred in the Southern District of Florida.

### IV.  FACTUAL BACKGROUND

**A.  The Unregistered Offer and Sale of Vergeous and Dream Team Securities**

12. From at least June 2013 through June 2016, Vergeous and Dream Team, through Renfroe, raised about $1.2 million from approximately 33 investors in Florida, Tennessee, Mississippi, Texas, Indiana, South Carolina, and Alabama through a series of unregistered securities offerings.

3

13.     Initially, Vergeous raised money from investors to finance the planned creation of a "paid" video game called Novus. After the Novus project was suspended in November 2014, Vergeous and Dream Team entered into a joint venture and each sold shares to investors for the stated purpose of funding "free-to-play" video game projects.

14.     Renfroe took responsibility for soliciting investments for both Vergeous and Dream Team. Around June 2013, Renfroe started raising money for Vergeous to finance the Novus project. He drafted the company's offering materials, including Private Placement Memoranda (PPM). Renfroe also created a video advertising the investment and posted it on Vergeous's website, as well as on "YouTube" and a Crowdfunding website called "fundable.com."

15.     At first, Renfroe was mostly successful in raising money from a handful of friends for Vergeous for $36,538 per share, or smaller fractional units. Renfroe then continued to raise money for Vergeous throughout 2014 from friends, although he also tried unsuccessfully to raise larger amounts of money from several high net worth individuals with whom he had become acquainted. At least two unaccredited investors purchased shares in Novus/Vergeous through these offerings.

16.     After the Novus project was suspended in November 2014, Renfroe again took primary responsibility for selling shares in Vergeous. Starting in May 2015, he launched a campaign soliciting investments in Vergeous by offering so-called "Family Legacy Shares." Renfroe prepared a new PPM and other offering materials, which he provided to potential investors. On at least three occasions, Renfroe advertised Family Legacy Share investments in Vergeous during a weekly radio show he hosted called the "Emerald Coast Senior Show." He also sent letters advertising the Vergeous investment directly to most of his Emerald Coast

customers.

17.     Unlike previous investors, most of the individuals who invested in the Vergeous Family Legacy Shares were not Renfroe's personal friends.  At least one investor heard about the opportunity through Renfroe's radio show.  Many of the Vergeous Family Legacy Share investors are elderly.  Half of the investors are 70 years of age or older, including two investors who are over 85 years old.  At least two of the Vergeous Family Legacy Share investors were unaccredited.

18.     At about the same time, Renfroe also marketed a smaller number of shares in Dream Team.  The Dream Team shares were primarily sold for $50,000 each or $25,000 for a half share.  Renfroe drafted Dream Team's PPM and other marketing materials, and again had primary responsibility for soliciting potential investors.  The majority of the investors in Dream Team had previously invested in Vergeous.  At least one Dream Team investor was unaccredited.

19.     As compensation for bringing in investors for Vergeous and Dream Team, Renfroe received a commission of 4% on each sale.  In total, he received $45,547 in commissions for selling the investments.  During the relevant period, Renfroe was not registered with the Commission as a broker or associated with a registered broker-dealer.

20.     No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities offered and sold by the Defendants.

### B.     Material Misrepresentations and Omissions

21.     Vergeous, Dream Team, and Renfroe made material misstatements and omissions to investors regarding Renfroe's disciplinary history with the NASD.  The PPMs for both Vergeous and Dream Team, which Renfroe prepared and distributed, included a biography of

5

Renfroe touting his experience as a "longtime financial advisor" or "longtime financial representative," and his past fundraising successes and "executive talents."  However, the offering materials omitted to disclose that Renfroe was, by agreement, permanently barred by the NASD for misusing customer funds.  Renfroe also made affirmative misstatements to Vergeous and Dream Team investors about why he left the securities industry.  During his radio show and in marketing materials posted on his website, Renfroe made misstatements to investors that he "voluntarily" gave up his securities licenses because it "caused a real conflict of conscience" for him to continue to place customers in investments that had a risk of loss.

22.     Vergeous and Renfroe also misrepresented to some Vergeous investors that their money would go toward the development of new "free-to-play" video games when in fact a substantial portion went to pay company debts and back salaries associated with the suspended Novus "paid" game.  The Vergeous offering materials Renfroe prepared and distributed to investors during 2015 focused on the company's need for funding to develop at least three free-to-play games.  For example, one of the two PPMs included a "Use of Proceeds" section which stated that "[f]unds received will be applied to the completion of the Free-to-Play games, and revenue thereafter applied as needed to the completion of the paid games."

23.     Contrary to these representations, Vergeous and Renfroe used $114,285 of the $502,263 received from Vergeous investors between February 2015 and August 2015 to pay off the company's outstanding external payroll and outside vendor debts leftover from work on Novus.  Vergeous and Renfroe also used an additional $36,200 of investor funds to pay Renfroe's back salary.  None of the relevant Vergeous PPMs or other marketing materials made any mention of debts owed by the company, much less an intention to use investor funds to pay off those debts.

24. Finally, Vergeous and Renfroe omitted to disclose to Vergeous investors that Dream Team holds complete ownership of the intellectual property rights for all joint video game projects it has with Vergeous. Starting in 2015, some Vergeous offering materials included vague references to "collaboration" between the company and Dream Team with regard to developing the free-to-play games, but made no mention of Dream Team's control of the intellectual property rights. In addition, the offering materials omitted to tell investors that Renfroe has a 30% ownership interest in Dream Team, despite stating that "no conflicts of interest exist."

## V. CLAIMS FOR RELIEF

### COUNT I

### Violations of Sections 5(a) and 5(c) of the Securities Act

25. The Commission repeats and realleges paragraphs 1 through 24 of its Complaint.

26. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities issued by Vergeous and Dream Team described in this Complaint and no exemption from registration existed with respect to these securities.

27. From June 2013 until June 2016, Vergeous, Dream Team and Renfroe, directly and indirectly:

   a. made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;
   b. carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after the sale; or
   c. made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security,

without a registration statement having been filed or being in effect with the Commission as to

such securities.

28. By reason of the foregoing, Vergeous, Dream Team and Renfroe violated and, unless enjoined, are reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II

### Violation of Section 17(a)(2) of the Securities Act

29. The Commission repeats and realleges paragraphs 1 through 24 of its Complaint.

30. From approximately June 2013 through June 2016, Vergeous, Dream Team and Renfroe, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in light of the circumstances under they were made, not misleading.

31. By reason of the foregoing, Vergeous, Dream Team, and Renfroe violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)].

## COUNT III

### Violation of Section 15(a)(1) of the Exchange Act
### By Renfroe

32. The Commission repeats and realleges paragraphs 1 through 24 of its Complaint.

33. Renfroe made use of the mails or any means or instrumentalities of interstate commerce to effect transactions in securities, or to induce or attempt to induce the purchase or sale of securities, without being associated with a broker or dealer that was registered with the

Commission in accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)].

34. By reason of the foregoing Renfroe violated and, unless enjoined, is reasonably likely to continue to violate, Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

## VI. RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged and:

### A. Permanent Injunction

Issue a Permanent Injunction, restraining and enjoining (a) Vergeous, Dream Team and Renfroe from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)] and Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)]; and (b) Renfroe from violating Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

### B. Disgorgement

Issue an Order directing Vergeous and Renfroe to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts and/or courses of conduct alleged in the Complaint.

### C. Civil Penalty

Issue an Order directing Renfroe to pay a civil money penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

### D. Further Relief

Grant such other and further relief as may be necessary and appropriate.

## E.
## Retention of Jurisdiction

Further, the Commission respectfully requests the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated: August 16, 2017                                   Respectfully submitted,

By:     s/ *David Staubitz*
        David Staubitz
        Counsel
        S.D. Fla. No. A5502360
        Direct Dial: (305) 982-6307
        Email: staubitzd@sec.gov

        Andrew O. Schiff
        Regional Trial Counsel
        S.D. Fla. No. A5501900
        Direct Dial: (305) 982-6390
        Email: schiffa@sec.gov

        Attorney for Plaintiff
        Securities and Exchange Commission
        801 Brickell Ave., Suite 1800
        Miami, FL 33131
        Telephone: (305) 982-6300
        Facsimile: (305) 536-4154